## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CELESTE C. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case: No. 1:26-cv-01940 |
| | ) | |
| WAYFARER FOUNDATION, *et al.*, | ) | Honorable Jorge L. Alonso |
| | ) | |
| Defendants. | ) | |

## THE WAYFARER FOUNDATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

NOW COMES Defendant THE WAYFARER FOUNDATION ("Foundation"), by and through its attorneys Jamie Filipovic and Riley Olson of O'Hagan Meyer LLC, for its Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and Rule 12(b)(6). In support, Defendant states as follows:

## RELEVANT FACTUAL SUMMARY

As alleged in the Complaint, the Foundation was a nonprofit organization founded "as a Baha'i-inspired organization with the mission to 'advance humankind spiritually towards a future peaceful world civilization." [Dkt. 1 at ¶ 19]. The organization's stated goal was to fund and support "spiritually-rooted and justice-oriented nonprofits." [*Id.*]. The Foundation closed its doors on July 1, 2025, which was announced on May 2, 2025 when Plaintiff and other staff members were separated from employment at the Foundation. [*Id.* at ¶ 55].

Plaintiff was hired by the Foundation in June 2023 at the age of fifty (50) and is now a fifty-two (52) year old Muslim, African American female who alleges she was subjected to discrimination and a hostile work environment based on her age, religion, sex, and race and subsequent retaliation. [*Id.* at ¶¶ 1, 24]. Therefore, Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII") for discrimination and retaliation based on race, religion,

and sex; the Age Discrimination in Employment Act of 1967 (the "ADEA") for age discrimination; and the Americans with Disabilities Act of 1990 (the "ADA") for disability discrimination. [*Id.*]. Additionally, Plaintiff brings parallel claims under the Illinois Human Rights Act (the "IHRA"). [*Id.* at ¶ 2]. Further, Plaintiff asserts state law claims for promissory and equitable estoppel, concluding she relied to her detriment on representations Defendants never made. [*Id.* at ¶ 3].

Plaintiff alleges that she was "reassured" by the former Executive Director that Defendant Foundation had a "sunset provision" of at least fifteen (15) years from its inception in 2021 and that she would not have accepted employment if she had not been "promised" that it had a 15-year sunset term. [*Id.* at ¶¶ 21-22]. Plaintiff began working for Defendant Foundation on June 19, 2023, as a Program Officer for Arts. [*Id.* at ¶ 24]. Plaintiff was promoted in December 2023 to the role of Program Director and then again in August 2024 to Senior Program Director, when she also became a member of the "Executive Team." [*Id.* at ¶¶ 25-26]. Plaintiff concedes that she also received merit increases and bonuses in 2023, 2024, and initially in 2025. [*Id.* at ¶ 29].

Plaintiff alleges that beginning in or around October 2024, Sarowitz revealed a pattern of hostility toward Muslims. [*Id.* at ¶ 30]. Notably, Plaintiff fails to allege what, if anything, Sarowitz actually said. Instead, Plaintiff only alleges that on some unspecified date, and at an unspecified time, she attempted to discuss Sarowitz's behavior with him, but he "reacted with anger" and that other unspecified employees reported "feeling fear" towards Sarowitz. [*Id.* at ¶¶ 32-33]. In January 2025, when Defendant's Executive Director took a leave of absence, Plaintiff alleges she began reporting directly to Sarowitz. [*Id.* at ¶ 36]. Months later, on March 14, 2025, Plaintiff was invited to a meeting at Sarowitz's home, where she was allegedly asked invasive questions about her Muslim religion and its beliefs, which she felt was hostile, discriminatory, and unwelcome. [*Id.* at

¶ 37]. Plaintiff further contends Sarowitz expressed a preference for hiring Bahá'í staff and promoting an applicant who was not previously selected for a promotion. [*Id.*].

Plaintiff conclusively alleges she was denied consideration for the Interim Executive Director position, which was given to a younger, white candidate, Jennifer Weigel, who practiced the Bahá'í faith. [*Id.* at ¶ 40]. Plaintiff claims she was more qualified, but that Sarowitz did not inform her of the opportunity, thereby allegedly preventing her from being considered for the role. [*Id.* at ¶¶ 40-41]. Plaintiff further states that Foundation staff – not Plaintiff herself – were "pressured" and "encouraged" to participate in educational programs called Ruhi courses, which Plaintiff characterizes as evidence of religious bias. [*Id.* at ¶ 42]. Plaintiff concludes she was treated in a disparate manner because, despite allegedly being the most qualified candidate, the position was given to a white, non-Muslim woman of the Bahá'í faith. [*Id.* at ¶ 44]. Plaintiff claims she was retaliated against by being excluded from strategy meetings and decision-making spaces, even though she simultaneously reveals in the preceding paragraph that the new Executive Director took over directing grant funding and public-facing community outreach. [*Id.* at ¶¶ 44-45].

Plaintiff then alleges she suffered a fall at home on March 31, 2025, and was unable to work until April 11, 2025, after which she sought **and received** an accommodation to work part-time four hours a day. [*Id.* at ¶ 46] (emphasis added). Plaintiff contends that she repeatedly worked beyond her restriction but fails to explain how. [*Id.* at ¶ 47]. Instead, Plaintiff concludes the Interim Executive Director's *behavior* became so severe and hostile that Plaintiff filed a discrimination complaint because she was denied an extension request to continue working on strategy documents and was told: "I know you're use to white people making rushed decisions, but that's not what this is." [*Id.* at ¶ 49]. Plaintiff asserts she was "shocked and offended" by the racialized remark. [*Id.*].

Plaintiff alleges she was troubled by what she perceived to be disparity after Sarowitz questioned her about a Muslim health clinic grant, asking if the clinic had familial ties to Betty Shabazz. [*Id.* at ¶ 50]. Plaintiff claims she made a formal discrimination and retaliation complaint to leadership on April 23, 2025, but that ten days later, on May 2, 2025, The Wayfarer Foundation announced it was shutting down. [*Id.* at ¶¶ 52-55]. Plaintiff was allegedly terminated on May 2, 2025, and contends her termination was retaliatory and occurred before the expiration of a 15-year sunset provision, which she allegedly detrimentally relied upon. [*Id.* at ¶¶ 61-63].

**<u>LEGAL STANDARD</u>**

A Rule 12(b)(1) motion tests federal jurisdiction, and the party invoking bears the burden of establishing the elements necessary for subject matter jurisdiction, including standing. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021). Under Rule 12(b)(1), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor when a defendant facially attacks standing. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021).

A motion to dismiss pursuant to Rule 12(b)(6) rests on whether the plaintiff has properly stated a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, taken as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). The complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.,* 536 F.3d 663, 668 (7th Cir. 2008). Dismissal for failure to state a

claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all of the plaintiff's well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nevada*, NA., 507 F.3d 614, 618 (7th Cir. 2007).

## ARGUMENT

### I. Plaintiff's IHRA Claims Alleged in Counts V and VI Must be Dismissed for Failure to Plead Exhaustion of Administrative Remedies[1]

Plaintiff's claims for: (1) discrimination based on age, race, religion, gender, and disability (Count V), and (2) retaliation (Count VI) under the IHRA fail at the threshold as Plaintiff fails to allege she satisfied the mandatory administrative prerequisites, an omission warranting dismissal.

It is well settled that "the IHRA does not allow an aggrieved party direct access to the courts." *Shelton v. Ernst & Young, LLP*, 143 F. Supp. 2d 982, 990 (N.D. Ill. 2001) (internal citations omitted). Instead, a complainant must first file a charge with the IDHR and then exhaust the administrative remedies under the IHRA. *Id.* at 990-91. As such, "in order for a plaintiff to state a claim under the IHRA, an allegation attesting that the administrative remedies provided in the IHRA have been exhausted is necessary." *Id.* at 991. Here, Plaintiff has failed to allege exhaustion of administrative remedies under the IHRA. *Id.* at 990 (dismissing claims for failure to state a claim as plaintiff failed to allege exhaustion of administrative remedies). Consequently, Plaintiff's failure to do so warrants dismissal of her claims brought under the IHRA in Counts V and VI.

### II. Count I Fails to State a Claim for Discrimination Under Title VII

---

[1] To the extent this Court were to find, *arguendo,* that Plaintiff did exhaust her claims under the IHRA, Counts V and VI assert claims under the IHRA that are substantively identical to the federal claims. The IHRA claims are analyzed under the same framework as their federal counterparts. *Luckett v. Human Rights Com.*, 210 Ill. App. 3d 169, 180 (1989). Additionally, where the Complaint fails to state claims under the ADA and ADEA, the corresponding IHRA claims fail for the same reasons.

Title VII prohibits employers from discriminating against any individual because of the "individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a violation of Title VII by proving (1) they are a member of a protected class; (2) they were meeting Defendant's legitimate performance expectations; (3) they suffered an adverse employment action; and (4) another similarly situated individual not in the protected class was treated more favorably than they were. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).

A.      <u>**Plaintiff Fails to State a Claim for Sex-Based Discrimination in Count I Under Title VII.**</u>

As a preliminary matter, Plaintiff fails to plead **any** facts to connect her allegedly discriminatory and retaliatory work environment to her sex. [*See, e.g.,* Dkt. 1]. The Complaint is entirely devoid of factual allegations that could even suggest Plaintiff's sex played any role in her termination or any other adverse employment action.

In fact, the only reference to "sex" or "gender" in connection with Count I appears in (i) paragraphs 1 and 2 of the Complaint that delineate the causes of action; (ii) Count I's sub-header; and (iii), in a single conclusory allegation in paragraph 67. [Dkt. 1 at ¶¶ 1, 2, 67]. Here, Plaintiff does not allege that any decision-maker relied on her sex in making employment decisions, made comments about her sex, or otherwise engaged in conduct from which discriminatory intent could plausibly be inferred. To the contrary, Plaintiff affirmatively underlines her own claim by alleging she was denied what she labels a promotion, which was merely an interim position for the nearly two months before closure, and for which she self-servingly claims she was "best qualified," while revealing that the individual selected for that role was also a woman. [Dkt. 1 at ¶ 44]. Furthermore, Plaintiff fails to allege that any similarly situated *male* was treated more favorably than she was. Plainly, such bare, formulaic recitations are insufficient as a matter of law.

In the employment discrimination context, the Seventh Circuit has held that the *Iqbal* and *Twombly* requirements "mean a plaintiff must advance plausible allegations that she experienced discrimination because of her protected characteristics." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021). Even taking the allegations as true, Plaintiff's Complaint lacks any non-conclusory factual basis from which discriminatory intent based on her sex can be inferred. *See Kaminski v. Elite Staffing, Inc.,* 23 F.4th 774, 778 (7th Cir. 2022) (explaining at a high level, plaintiff alleges she lost her job because of her age, race and national origin, but Rule 8 requires more; there must be some *facts* that make the wrongful discharge contention plausible).

Even accepting Plaintiff's allegations as true, the Complaint lacks any non-conclusory factual allegations supporting an inference of discrimination based on sex. Accordingly, Plaintiff's sex-based discrimination claim under Title VII warrants dismissal.

B. **Plaintiff Fails to State a Claim for Race-Based Discrimination in Count I Under Title VII.**

Plaintiff's race-based discrimination likewise fails to state a plausible cause of action under Title VII. While Plaintiff need not plead a full *prima facie* case, she must provide more than a bare assertion of discrimination based on her race.

Here, Plaintiff alleges she was discriminated against because of her race, but does not allege **a single** allegation articulating *how* she was discriminated against because of her race. Plaintiff vaguely alleges that "Plaintiff's age (52), gender (female), religion (Muslim) **and/or race (African American)** with disability and need for a medical accommodation, was at least one factor that made a difference in Defendants' decision to terminate Plaintiff and replace her with a younger non-African American male, non-Muslim, without a disability." [Dkt. 1 at ¶ 94]. However, this is blatantly insufficient to meet even the low notice-pleading threshold in federal courts. Even though the Seventh Circuit requires a "minimal pleading standard" for claims of race discrimination, a

plaintiff must still allege that the employer instituted a specified adverse employment action against them on the basis of their race. *Taylor v. PSC Prof'l Sec. Consultants,* No. 16 cv 5210, 2017 U.S. Dist. LEXIS 173911, *15 (N.D. Ill. Oct. 20, 2017). Here, by pleading that any one of these several unrelated protected characteristics "and/or" may have been the cause, Plaintiff fails to plead any coherent theory at all and fails to give Defendant notice of the basis of her claim.

In short, Plaintiff's allegations – or lack thereof – are insufficient to state a claim for race-based discrimination. Accordingly, Plaintiff's race-based discrimination claim under Title VII should be dismissed for failure to state a claim.

C.      **Plaintiff Fails to State a Claim for Religion-Based Discrimination in Count I Under Title VII.**

Title VII does not apply to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on of its activities. 42 U.S.C. § 2000e-1(a).

Here, Plaintiff's own pleading reveals that the Foundation is evidently an entity that qualifies as a religious organization, as it is (1) a nonprofit organization; (2) with a clearly defined religious purpose; (3) that incorporates religious practices – such as Ruhi courses – into its activities; (4) and holds itself out to the public as a religious organization. [*See* Dkt. 1 at ¶¶ 19, 42] (alleging "Wayfarer Foundation was created as a Bahá'í inspired organization with the mission to advance humankind spiritually towards a future peaceful world civilization" with a stated goal "to fund and support spiritually-rooted and justice-oriented nonprofits" and that "staff were encouraged to take part in Ruhi courses, which are educational programs rooted in Bahá'í teachings"); *compare to Grote v. Sebelius,* 708 F.3d 850 (7th Cir. 2013) (*referencing LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 227-28 (3d Cir. 2007)) (finding community center exempt from Title VII as religious organization based on, *inter alia,* its nonprofit

nature, articles and bylaws that its purpose was to promote Jewish identify and life, and presentation of Judaic programming).

Blatantly, the Foundation qualifies as a religious organization within the meaning of Title VII as its mission, nonprofit status, structure, and operations are grounded in and guided by religious principles, and it holds itself out as a faith-based entity. Thus, Plaintiff's Title VII claim for religious-based discrimination fails as a matter of law and warrants dismissal with prejudice.

### III. Count II Warrants Dismissal as Plaintiff Has Not and Cannot Allege Retaliation and Retaliatory Harassment Based on Protected Activity

Plaintiff's retaliation claims in Count II fail as she does not allege factual allegations showing she suffered an adverse employment action for engaging in a protected activity.

For retaliation under Title VII, a plaintiff must allege: (1) she engaged in a protected activity; (2) suffered an adverse employment action; and (3) a causal connection between the two. *Gracia v. Sigmatron Int'l, Inc.,* 986 F.3d 1058, 1062 (7th Cir. 2021). Title VII prohibits retaliation against employees engaging in a statutorily protected activity by opposing unlawful employment practices or participating in related investigations. 42 U.S.C. §2000e-3(a). "A retaliation claim requires proof that the plaintiff suffered an adverse employment action because of their statutorily protected activity." *Lord v. High Voltage Software Inc.,* 839 F.3d 556, 563 (7th Cir. 2016).

Here, Plaintiff alleges that she engaged in a protected activity by filing complaints of religious and race discrimination in April 2025 with the Human Resources contractor and that afterward, the Human Resources contractor was "abruptly terminated." [Dkt. 1 at ¶ 71]. However, Plaintiff's retaliation claims fail because the conduct reported does not constitute protected activity under the law. To qualify as a protected activity, the plaintiff must have "a sincere and reasonable belief that he is opposing an unlawful practice." *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.,* 224 F.3d 701, 706-07 (7th Cir. 2000). Objective reasonableness of the belief is based on

whether the conduct falls within the scope Title VII prohibits, not whether it was severe or pervasive enough to be unlawful. *Magyar v. St. Joseph Reg'l Med. Ctr.,* 544 F.3d 766, 771 (7th Cir. 2008). Plainly, Plaintiff's report to the Human Resources contractor cannot be a protected activity as a matter of law, since the conduct she complains of was not discrimination *based on her race or religion,* as argued *supra.* Absent this showing, Plaintiff cannot establish the first element of a retaliation claim and thus cannot show a causal link to any alleged adverse employment action.

Additionally, there are no factual allegations pled that could plausibly connect Plaintiff's termination – which was made because the Foundation as a whole was shutting down – to Plaintiff's complaint made to Human Resources. Plaintiff being let go because her employer was beginning to wind down and cease to exist is not an adverse employment action *committed by* Defendant Foundation. Plaintiff's theory of retaliation would require this Court to accept that the Defendant Foundation shut down its operations simply to facilitate Plaintiff's termination after she complained to human resources, which is an implausible and facially untenable assertion.

Further, a retaliation claim cannot be sustained by asserting vague discrimination or harassment in general terms, without identifying a connection to a protected class. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). To establish a causal connection, Plaintiff must allege that Defendant Foundation would not have taken adverse action but-for the protected activity. *McKenzie v. Illinois Dept. of Transp.,* 92 F.3d 473, 483 (7th Cir. 1996). A cursory review of Plaintiff's Complaint reveals that she also fails to allege that any adverse action would not have occurred but for making one complaint to Defendant Foundation's Human Resources contractor.

Accordingly, because Plaintiff fails to allege she engaged in a protected activity under Title VII and fails to establish the Foundation took an adverse employment action causally connected to her complaint, Plaintiff's retaliation claims in Count II warrant dismissal.

**IV.** **Count III Fails as a Matter of Law as Plaintiff Fails to Allege a Violation of the ADEA**

Plaintiff's Complaint is devoid of any factual allegations that she was discriminated against based on her age. To plead an age discrimination claim under the ADEA, a plaintiff must allege she is over forty years old and experienced an adverse action because of her age. *Gottlieb v. Adtalem Glob. Educ.,* No. 25 CV 7752, 2025 LEXIS 408058, *6 (N.D. Ill. Oct. 22, 2025). A plaintiff must establish "but-for" causation, meaning that the employer would not have taken any adverse action if the plaintiff were younger. *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009).

First, Plaintiff was hired in June of 2023 at age 50, and the Foundation closed just two years later, in May of 2025, when she was 52. In her Complaint, even when read in a light most favorable to Plaintiff, it is clear that Plaintiff utterly fails to allege any facts that she was discriminated against as a direct result of her age. Instead, Plaintiff alleges – at most – that another woman who was eight (8) years younger than her was given the job she allegedly was the best qualified for. [Dkt. 1 at ¶¶ 76-77]. However, the Seventh Circuit has held that relatively insubstantial age differences – particularly where both individuals are over 40 – do not, by themselves, create a plausible inference of age discrimination. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313 (1996) (reasoning "an inference [of age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger."). In *Hartley v. Wisconsin Bell*, the Seventh Circuit held that a six (6) and seven (7) year age difference between the plaintiff and younger employees who were all over the age of 40 was presumptively insubstantial and failed to establish liability absent evidence that age motivated the adverse action or the employer's stated reasons were pretextual. 124 F.3d 887, 893 (7th Cir. 1997).

In sum, Plaintiff asks this Court to infer age discrimination based solely on a modest age difference with another employee over 40-years-old and her subjective belief that she was more qualified, which is insufficient to state an ADEA claim. As such, Count III warrants dismissal.

**V.      Count IV Fails to State a Claim for Violation of the ADA**

Not only does Plaintiff fail to properly allege that her "injury" falls within the purview of the ADA, but Plaintiff's Complaint is entirely devoid of any allegations that her disability was the "but for" cause of any adverse employment action that she experienced.

To plead a disability discrimination claim under the ADA, a plaintiff must allege: (i) that she is disabled; (ii) she was otherwise qualified to perform essential functions of her job with or without reasonable accommodation; (iii) she suffered an adverse employment action; and (iv) the adverse action was caused by her disability. *Roberts v. City of Chi.*, 817 F.3d 561, 565 (7th Cir. 2016). For causation, a plaintiff must plead their perceived disability was a 'but for' cause of the adverse action. *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010).

Plaintiff pleads, only that she "suffered an injury in a fall while at home" and because of that was unable to work until April 11, 2025, at which time she sought and received accommodations. [Dkt. 1 at ¶ 46]. Under the ADA, the term "disability" means that an individual has: (1) a physical or mental impairment that substantially limits one or more "major life activities"; (2) a record of such impairment; or (3) being regarded as having such an impairment. *Carothers v. Cty. of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015); 42 U.S.C. § 12102(1). Notably, Plaintiff describes the alleged injury as having to recover from a "very serious and painful rib contusion and bruise" that had taken place from a "fall while at home." [Dkt. 1 at ¶¶ 46, 49]. Nonetheless, Plaintiff claims this substantially limited the major life activity of working and moving. [*Id.* at ¶ 82]. However, this temporary, short-term impairment – particularly one that

would resolve within weeks – does not qualify as a disability under the ADA absent allegations of substantial, long-term limitation. *See James v. Hyatt Regency Chi.,* No. 09 C 7873, 2011 U.S. Dist. LEXIS 142391, *21 (N.D. Ill. Dec. 12, 2011) (finding short-term temporary impairments or medical conditions that have little or no long-term impact do not qualify as disabilities for ADA purposes). Consequently, given that Plaintiff fails to allege any continuing impairment beyond a short time, Plaintiff fails to establish that her alleged injury qualifies as a disability under the ADA.

Moreover, even if Plaintiff could plausibly allege a disability, her claim fails as she alleges that Defendant granted her requested accommodations of working remotely, part-time, four hours a day. [Dkt. 1 at ¶ 46, 83]. Plaintiff thereby acknowledges she received reasonable accommodations but nonetheless claims that failure to receive additional extensions was a form of discrimination. [*Id.* at ¶¶ 49, 84]. Blatantly, Plaintiff's dissatisfaction with not receiving additional extensions does not transform an otherwise reasonable accommodation into disability discrimination.

Additionally, Plaintiff's claim that Defendant failed to participate in an interactive process likewise fails. An employee's accommodation request requires the employer to engage in a flexible, interactive process to identify a reasonable accommodation. *Basden v. Prof'l Transp.,* Inc., 714 F.3d 1034, 1038 (7th Cir. 2013). However, the failure to engage in the interactive process required by the ADA is not an independent basis for liability under the statute, and that failure is actionable *only if* it prevents identification of an appropriate accommodation for a qualified individual. *Id.* at 1039. Here, Plaintiff reveals not only that she presented a reasonable accommodation, but that the accommodation was granted. Consequently, Plaintiff cannot attempt to establish liability against Defendant for an alleged failure to participate in an interactive process.

Lastly, Plaintiff's Complaint is devoid of any facts that connect Plaintiff's termination with her alleged disability. There are no allegations that any decision-maker involved in the decision to

terminate Plaintiff was aware of her disability, ever discussed the disability in connection with the termination, or that the termination was motivated by disability-based animus. [*See, e.g.,* Dkt. 1].

Therefore, Plaintiff has failed to plead disability discrimination and Count IV warrants dismissal.

**VI.** **Count VII Warrants Dismissal as Plaintiff Has Not and Cannot Assert Claims of Promissory and Equitable Estoppel**

To bring a successful claim of promissory estoppel under Illinois law, a plaintiff must prove (and at the pleading stage, allege) that (1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on the promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment. *Reitman v. Evanston/ Skokie Cmty. Consol. Sch. Dist. 65*, 764 F. Supp. 3d 717, 729-30 (N.D. Ill. 2025). In *Reitman,* the court explained that promissory estoppel is recognized as creating an implied-in-fact contract that imposes a duty based on a promissory expression showing an intention to be bound and will succeed where other elements of a contract exist – offer, acceptance, and mutual assent – but consideration is lacking. *Id.* at 730.

Here, Plaintiff's theory fails for the same fundamental reason identified in *Reitman*; the alleged "agreement" lacks the essential elements of contract formation. Plaintiff's allegations fall far short of establishing the remaining elements of offer, acceptance, and mutual assent needed for contract formation. At most, Plaintiff alleges the former Executive Director of Defendant "reassured" her – when asked about the longevity of the foundation – that a "sunset provision" was "at least fifteen (15) years from its inception in 2021." [Dkt. 1 at ¶ 21]. This allegation does not come close to pleading an enforceable promise of continued employment on behalf of Plaintiff. The Foundation's former Executive Director conveying information on a "sunset provision" does not come close to an offer, nor does it reflect acceptance, and it certainly contains no mutual assent. Critically, the alleged "promise" concerns the anticipated duration of the Foundation itself, not any

commitment to Plaintiff's continued employment. There are no guarantees that a Foundation will remain open for a set period of time, let alone a promise of employment for 15 years.

Additionally, Plaintiff's equitable estoppel claim likewise fails. Equitable estoppel requires: (1) misrepresentation or concealment of material fact; (2) knowledge of the falsity; (3) lack of knowledge by the party asserting estoppel; (4) intent or reasonable expectation that the representation be acted upon; (5) reasonable reliance in good faith to the party's detriment; and (6) resulting prejudice by the party's reliance if the other party is permitted to deny the truth. *Aprill v. Aquila*, No. 20 C 04657, 2022 U.S. Dist. LEXIS 36188, *41 (N.D. Ill. Mar. 1, 2022).

Here, Plaintiff plainly fails to satisfy these elements. At most, Plaintiff alleges that a former executive made a general statement regarding the anticipated longevity of the foundation, i.e., that it would operate for approximately fifteen more years. However, and fatal to Plaintiff's claim, she does not allege any misrepresentation concerning her employment. No definite promise of continued employment for a fixed term, no job security, no protection from termination. Nor does Plaintiff allege that any such statement was false when made or that Defendant knew it to be false. Simply put, a generalized, forward-looking statement about the duration of an organization is not a material misrepresentation of fact. Plaintiff's equitable estoppel claim fails as a matter of law, and dismissal of Count VII is warranted.

**<u>CONCLUSION</u>**

WHEREFORE, Defendant, THE WAYFARER FOUNDATION, respectfully requests that this Honorable Court enter an Order granting its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), with costs assessed against the Plaintiff, and any other relief to which this Court deems equitable and just.

DATED: May 11, 2026

Respectfully submitted:

THE WAYFARER FOUNDATION

By:/s/ *Jamie L. Filipovic*
One of its attorneys

Jamie L. Filipovic
Riley B. Olson
O'Hagan Meyer, LLC
One E. Wacker Dr., Suite 3400
Chicago, Illinois 60601
Telephone:  312.422.6100
Facsimile:   312.422.6110
jfilipovic@ohaganmeyer.com
rolson@ohaganmeyer.com