**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CELESTE C. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case: No. 1:26-cv-01940 |
| | ) | |
| WAYFARER FOUNDATION, | ) | Honorable Jorge L. Alonso |
| WAYFARER PATHWAYS, and | ) | |
| STEVE SAROWITZ, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**WAYFARER PATHWAYS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COMES Defendant WAYFARER PATHWAYS ("Pathways"), by and through its attorneys Jamie Filipovic and Riley Olson of O'Hagan Meyer LLC, for its Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and Rule 12(b)(6). In support, Defendant states as follows:

**INTRODUCTION**

As a threshold matter, Wayfarer Pathways should be dismissed because it was not Plaintiff's employer, and there are no facts alleged to support such a claim. Plaintiff relies only on an improper group pleading that is contradicted by her own allegations and utterly devoid of any facts supporting a joint-employer or related theory. Accordingly, dismissal with prejudice is warranted as to all claims against Defendant Wayfarer Pathways.

The Wayfarer Foundation (the "Foundation") was a nonprofit organization that closed its doors on July 1, 2025, which was announced on May 2, 2025 when Plaintiff and other staff members were separated from employment. [Dkt. 1 at ¶ 55]. However, Defendant Pathways and the Foundation are separate legal entities, and only the Foundation was Plaintiff's employer; not Pathways. Instead, Plaintiff's Complaint is a paradigmatic example of a conclusory pleading that

strings together nearly every conceivable employment-related claim without supplying the factual allegations required to state any of them. Plaintiff relies on vague, generalized allegations of speculation and formulaic recitations of legal elements rather than concrete facts.

In sum, dismissal of the Complaint is warranted outright as to Defendant Pathways and Plaintiff's claims for (1) sex-based discrimination and race-based discrimination (Count I); (2) retaliation and retaliatory harassment (Count II); (3) violation of the Age Discrimination in Employment Act (Count III); (4) violation of the Americans with Disabilities Act (Count IV); (5) discrimination in violation of the Illinois Human Rights Act based on age, race, religion, gender, and disability (Count V); (6) retaliation under the Illinois Human Rights Act (Count VI); and (7) promissory estoppel and equitable estoppel under Illinois law (Count VII) should be barred.

**RELEVANT FACTUAL SUMMARY**

As alleged in the Complaint, the Foundation was a nonprofit organization founded "as a Baha'i-inspired organization with the mission to 'advance humankind spiritually towards a future peaceful world civilization." [Dkt. 1 at ¶ 19]. The organization's stated goal was to fund and support "spiritually-rooted and justice-oriented nonprofits." [*Id.*]. The Foundation closed its doors on July 1, 2025, which was announced on May 2, 2025 when Plaintiff and other staff members were separated from employment at the Foundation. [*Id.* at ¶ 55].

Plaintiff was hired by the Foundation in June 2023 at the age of fifty (50) and is now a fifty-two (52) year old Muslim, African American female who alleges she was subjected to discrimination and a hostile work environment based on her age, religion, sex, and race. [*Id.* at ¶¶ 1, 24]. Plaintiff further alleges that, after engaging in a purported protected activity, Defendants retaliated against her. [*Id.* at ¶ 1]. Based on these allegations, Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII") for discrimination and retaliation based on race,

religion, and sex; the Age Discrimination in Employment Act of 1967 (the "ADEA") for age discrimination; and the Americans with Disabilities Act of 1990 (the "ADA") for disability discrimination. [*Id.*]. Additionally, Plaintiff brings parallel claims under the Illinois Human Rights Act (the "IHRA"). [*Id.* at ¶ 2]. Even further, Plaintiff asserts state law claims for promissory estoppel and equitable estoppel, alleging in a conclusory fashion that she relied to her detriment on certain representations that Defendant Pathways never made. [*Id.* at ¶ 3].

Plaintiff alleges that while interviewing for a position at Defendant Foundation, she inquired about the longevity of its commitment to its stated purpose and that she was "reassured" by the former Executive Director that Defendant Foundation had a "sunset provision" of at least fifteen (15) years from its inception in 2021 and alleges that she would not have accepted employment if she had not been "promised" that it had a 15-year sunset term. [*Id.* at ¶¶ 21-22]. Nonetheless, Plaintiff began working for Defendant Foundation on June 19, 2023, as a Program Officer for Arts. [*Id.* at ¶ 24]. Plaintiff was promoted in December 2023 to the role of Program Director and then again in August 2024 to Senior Program Director, when she also became a member of the "Executive Team." [*Id.* at ¶¶ 25-26]. Plaintiff concedes not only that she had been promoted throughout her tenure at Defendant Foundation, but that she also received merit increases and bonuses in 2023, 2024, and initially in 2025. [*Id.* at ¶ 29].

Plaintiff alleges that beginning in or around October 2024, Sarowitz revealed a pattern of hostility toward Muslims. [*Id.* at ¶ 30]. Plaintiff states that Sarowitz confronted participants at a conference from various religions about his position supporting the Israeli side of the event and argued hostilely. [*Id.* at ¶ 31]. Notably, Plaintiff fails to allege what, if anything, Sarowitz actually said. Instead, Plaintiff only alleges that on some unspecified date, and at an unspecified time, she attempted to discuss Sarowitz's behavior with him, but he "reacted with anger" and that other

unspecified employees reported "feeling fear" towards Sarowitz. [*Id.* at ¶¶ 32-33]. Plaintiff alleges that following this conference, she and other unidentified staff members who were perceived as supporting Palestinian causes were questioned regarding their religious beliefs, loyalty, and trustworthiness, which she contends created a hostile work environment. [*Id.* at ¶ 34]. Plaintiff further alleges that the Foundation's Executive Director initially restricted Sarowitz's access to the Foundation's office, after which he returned and issued an apology to the staff. [*Id.* at ¶ 35].

In January 2025, when Defendant's Executive Director took a leave of absence, Plaintiff alleges she began reporting directly to Sarowitz. [*Id.* at ¶ 36]. Months later, on March 14, 2025, Plaintiff alleges she was invited to a breakfast meeting at Sarowitz's home, where she was asked invasive questions about her Muslim religion and its beliefs, which made her feel that the conversation was hostile, discriminatory, and unwelcome. [*Id.* at ¶ 37]. Plaintiff alleges she was "pressed to assess the loyalty of other staff" and that he stated, "she couldn't have done it alone" when allegedly referring to the former Executive Director keeping him out of the office and "other issues between the two." [*Id.* at ¶ 38]. Plaintiff further contends Sarowitz expressed a preference for hiring Bahá'í staff and promoting an applicant who was not previously selected for a promotion, and that Plaintiff stated: "hiring based on religious identity was inappropriate, and that equity required competency-based and values-based hiring practices." [*Id.*].

Plaintiff then makes the conclusory leap that she was denied any consideration for the Interim Executive Director position, and that a white, younger candidate named Jennifer Weigel, who was a member and practitioner of the Bahá'í faith, was hired. [*Id.* at ¶ 40]. Plaintiff further concludes that she was more qualified for the position but was not considered for it, and that Sarowitz did not mention it to her, which meant she was explicitly prevented from being considered for the role because there was no transparent selection process. [*Id.* at ¶¶ 40-41].

Plaintiff additionally contends – not that she was "pressured" – but that Defendant Foundation's staff was "pressured" and "encouraged" to participate in education programs called Ruhi courses. [*Id.* at ¶ 42]. Plaintiff purports that this was an explicit religious bias presented without consideration for diversity or inclusion. [*Id.*].

Plaintiff concludes that she knows she was treated in a disparate manner because she was the best-qualified person for the role of Executive Director, but another woman who was white, non-Muslim, and of the Bahá'í faith got the job. [*Id.* at ¶ 44]. Plaintiff goes on to claim she was retaliated against by being excluded from strategy meetings and decision-making spaces she previously led, even though, in the preceding paragraph, she reveals that the new Executive Director took over directing grant funding and public-facing community outreach. [*Id.* at ¶¶ 44-45].

Plaintiff then moves on to allege that she suffered a fall at home on March 31, 2025, and because of that injury, she was unable to work until April 11, 2025, after which she sought **and received** an accommodation to work part-time four hours a day. [*Id.* at ¶ 46] (emphasis added). However, Plaintiff claims that she had to repeatedly work beyond her work restriction, although she fails to explain how. [*Id.* at ¶ 47]. Instead, Plaintiff makes another conclusory leap that the Interim Executive Director's *behavior* became so severe and hostile that Plaintiff filed a discrimination complaint because the Interim Director denied Plaintiff's extension request to continue working on strategy documents and said: "I know you're use to white people making rushed decisions, but that's not what this is." [*Id.* at ¶ 49]. Plaintiff asserts she was "shocked and offended" by the racialized remark. [*Id.*].

Plaintiff then alleges she was deeply troubled, and the disparity was so glaring because Sarowitz asked her questions about a $50,000 grant for a Muslim health clinic in Chicago and

inquired if the clinic had familial ties to Betty Shabazz. [*Id.* at ¶ 50]. Plaintiff claims she made a formal discrimination and retaliation complaint to leadership on April 23, 2025, but that ten (10) days later, on May 2, 2025, Wayfarer Foundation announced it was shutting down. [*Id.* at ¶¶ 52-55]. Plaintiff purports that she was terminated via telephone call on May 2, 2025, and contends that her termination was retaliatory and occurred prior to the anticipated expiration of a 15-year sunset provision, which she claims to have detrimentally relied upon. [*Id.* at ¶¶ 61-63].

Notably, none of these allegations identify Pathways or are directed toward Pathways, as Pathways was not Plaintiff's employer, as explained in further detail in Section I below.

**LEGAL STANDARD**

A Rule 12(b)(1) motion tests federal jurisdiction, and the party invoking bears the burden of establishing the elements necessary for subject matter jurisdiction, including standing. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021). Under Rule 12(b)(1), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor when a defendant facially attacks standing. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021).

A motion to dismiss pursuant to Rule 12(b)(6) rests on whether the plaintiff has properly stated a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Bell Atlantic Corp. v. Twombly,* the United States Supreme Court held that to survive a motion to dismiss, a complaint must contain sufficient factual matter, taken as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). The complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to

relief above the speculative level." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.,* 536 F.3d 663, 668 (7th Cir. 2008).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all of the plaintiff's well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nevada*, NA., 507 F.3d 614, 618 (7th Cir. 2007). The court reads the complaint and assesses its plausibility as a whole. *See Atkins v. City of Chi*., 631 F.3d 823, 832 (7th Cir. 2011).

## ARGUMENT

### I. Wayfarer Pathways Must be Dismissed as it was Not Plaintiff's Employer[1]

Similarly, all claims against Defendant Wayfarer Pathways fail as a matter of law because Defendant Wayfarer Pathways was not Plaintiff's employer and Plaintiff fails to plausibly allege as such.

Plaintiff's sole allegation on this point is that "Plaintiff Smith, at all times, was employed by Defendants in its office located in Cook County, at 350 Linden Avenue, Wilnette [sic], Illinois." [Dkt. 1 at ¶ 10]. This is a classic example of impermissible group pleading that fails to satisfy the federal pleading standards. First, this allegation is conclusory and internally deficient, as it merely lumps "Defendants" together without identifying which entity actually employed Plaintiff or providing any factual basis for treating both entities as Plaintiff's employer. Second, Plaintiff's allegation is contradicted by its very own factual content in the preceding two (2) paragraphs.

---

[1] To the extent this Court were to conclude at the pleading stage that Defendant has alleged Pathways was her employer – which Pathways expressly denies – Pathways hereby incorporates by reference and joins the arguments asserted in Co-Defendant the Wayfarer Foundation's Motion to Dismiss to the extent those arguments apply to the claims asserted against Pathways.

Plaintiff identifies a specific office location, and that address corresponds to the entity that actually employed her, Defendant Wayfarer Foundation. [*Id.* at ¶ 8]. Not Defendant Wayfarer Pathways. [*Id.* at ¶¶ 8, 9, 10]. Thus, even accepting Plaintiff's allegations as true, they support only that Defendant Wayfarer Foundation was Plaintiff's employer. Furthermore, Plaintiff does not even attempt to plead any factual allegations establishing any basis to treat Defendant Wayfarer Pathways as her employer under applicable law. Here, Plaintiff alleges none of these facts as to Defendant Wayfarer Pathways. In that same vein, Plaintiff likewise does not even attempt to – let alone plausibly plead – any alternative theory of liability such as a joint employer relationship.

Put simply, Plaintiff's attempt to sweep Defendant Wayfarer Pathways into this case rests on nothing more than a conclusory, group-based allegation that is both legally insufficient and factually undermined by the Complaint itself. This deficiency is fatal to all claims asserted against Defendant Pathways, and as such, Plaintiff's Complaint should be dismissed, with prejudice, in its entirety as it pertains to Defendant Wayfarer Pathways.

II. **Plaintiff's IHRA Claims Alleged in Counts V and VI Must be Dismissed for Failure to Plead Exhaustion of Administrative Remedies[2]**

Plaintiff's claims for: (1) discrimination based on age, race, religion, gender, and disability in violation of the IHRA (Count V), and (2) retaliation in violation of the IHRA (Count VI) fail at the threshold because Plaintiff fails to allege that she satisfied the mandatory administrative prerequisites. This omission warrants dismissal.

---

[2] To the extent this Court were to find, *arguendo,* that Plaintiff did exhaust her claims under the IHRA, Counts V and VI assert claims under the IHRA that are substantively identical to the federal claims. The IHRA claims are analyzed under the same framework as their federal counterparts. *Luckett v. Human Rights Com*., 210 Ill. App. 3d 169, 180 (1989) ("When analyzing claims of discrimination under the [I]HRA, Illinois courts have looked to the standards applicable to analogous Federal claims"). Where the Complaint fails to state claims under the ADA and ADEA, the corresponding IHRA claims fail for the same reasons.

It is well settled that "the IHRA does not allow an aggrieved party direct access to the courts." *Shelton v. Ernst & Young, LLP*, 143 F. Supp. 2d 982, 990 (N.D. Ill. 2001) (internal citations omitted). Instead, a complainant must first file a charge with the IDHR and then exhaust the administrative remedies under the IHRA. *Id.* at 990-91. As such, "in order for a plaintiff to state a claim under the IHRA, an allegation attesting that the administrative remedies provided in the IHRA have been exhausted is necessary." *Id.* at 991. Here, a cursory review of the Complaint reveals that Plaintiff failed to allege exhaustion of administrative remedies under the IHRA. *Id.* at 990 (holding the plaintiff's claims were dismissed for failure to state a claim as he failed to allege he exhausted his administrative remedies). Consequently, Plaintiff's failure to do so warrants dismissal of her claims brought under the IHRA in Counts V and VI.

### III. <u>Count VII Warrants Dismissal as Plaintiff Has Not and Cannot Assert Claims of Promissory and Equitable Estoppel</u>

Plaintiff's promissory estoppel and equitable estoppel claims fail as a matter of law because Plaintiff does not allege that Defendant Wayfarer Pathways made any definite promise, material misrepresentation, or concealment of fact to Plaintiff.

Promissory estoppel requires a clear and definite promise. Here, Plaintiff does not allege any *promise* of 15 years of employment, only a 15-year "sunset provision." However, this is not a guarantee of employment. To bring a successful claim of promissory estoppel under Illinois law, a plaintiff must prove (and at the pleading stage, allege) that (1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on the promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment. *Reitman v. Evanston/Skokie Cmty. Consol. Sch. Dist. 65*, 764 F. Supp. 3d 717, 729-30 (N.D. Ill. 2025)(citing *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 906 N.E.2d 520 (Ill. 2009)). In *Reitman,* the court explained that promissory estoppel is recognized as creating an implied-in-fact

contract that imposes a duty based on a promissory expression showing an intention to be bound. *Id.* at 730 (referencing *Matthews v. Chicago Transit Authority*, 2016 IL 117638, 402 Ill. Dec. 1, 51 N.E.3d 753, 780 (Ill. 2016)). "Under Illinois law, a promissory estoppel claim will succeed where the other elements of a contract exist (offer, acceptance, and mutual assent), but consideration is lacking." *Id.*

Here, Plaintiff's theory fails for the same fundamental reason identified in *Reitman*; the alleged "agreement" lacks the essential elements of contract formation. Indeed, Plaintiff's allegations fall far short of establishing the remaining elements of offer, acceptance, and mutual assent needed for contract formation. At most, Plaintiff alleges the former Executive Director of the Foundation "reassured" her – when asked about the longevity of the foundation – that a "sunset provision" was "at least fifteen (15) years from its inception in 2021." [Dkt. 1 at ¶ 21]. Clearly, this allegation does not come close to pleading an enforceable promise of continued employment on behalf of Plaintiff. The Foundation's former Executive Director conveying information on Defendant's prior "sunset provision" does not come close to an offer, nor does it reflect acceptance, and it certainly contains no mutual assent. Critically, the alleged "promise" concerns the anticipated duration of the foundation itself, not any commitment to Plaintiff's continued employment. There are no guarantees that a Foundation will remain open for a set period of time, let alone a promise of employment for 15 years.

Additionally, Plaintiff's claims for equitable estoppel likewise fail. The elements of equitable estoppel are: "(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the

party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *Aprill v. Aquila*, No. 20 C 04657, 2022 U.S. Dist. LEXIS 36188, *41 (N.D. Ill. Mar. 1, 2022) (citing *First Mercury Ins. Co. v. Ciolino*, 2018 IL App (1st) 171532, ¶ 52, 423 Ill. Dec. 869, 107 N.E.3d 240).

Here, Plaintiff plainly fails to satisfy these elements. At most, Plaintiff alleges that a former executive of the Foundation – not Pathways – made a general statement regarding the anticipated longevity of the foundation, i.e., that it would operate for approximately fifteen more years. However, and fatal to Plaintiff's claim, she does not allege any misrepresentation concerning her employment. No definite promise of continued employment for a fixed term, no job security, no protection from termination. Nor does Plaintiff allege that any such statement was false when made or that Pathways knew it to be false. Simply put, a generalized, forward-looking statement about the duration of an organization is not a material misrepresentation of fact. Plaintiff's equitable estoppel claim fails as a matter of law, and dismissal of Count VII is warranted.

### CONCLUSION

WHEREFORE, Defendant, WAYFARER PATHWAYS, respectfully requests that this Honorable Court enter an Order granting its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), with costs assessed against the Plaintiff, and any other relief to which this Court deems equitable and just.

DATED: May 11, 2026

                                      Respectfully submitted:

                                        WAYFARER PATHWAYS

                                        By:/s/ *Jamie L. Filipovic*
                                               One of its attorneys

Jamie L. Filipovic
Riley B. Olson
O'Hagan Meyer, LLC
One E. Wacker Dr., Suite 3400
Chicago, Illinois 60601
Telephone:  312.422.6100
Facsimile:   312.422.6110
jfilipovic@ohaganmeyer.com
rolson@ohaganmeyer.com