## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

CELESTE C. SMITH,

        Plaintiff,

vs.

WAYFARER FOUNDATION and
WAYFARER PATHWAYS, and
STEVE SAROWITZ, Individually.

        Defendants.

Case No. 1:26-cv-01940
Hon. Jorge L. Alonso

/

Melvin Houston (6188334)
Attorney for Plaintiff
15346 Asbury Park
Detroit, MI 48227-1545
(313) 835-6479
aa4624@wayne.edu

Jamie L. Filipovic
Riley B. Olson
O'Hagan Meyer, LLC
One E. Wacker Dr., Suite 3400
Chicago, IL 60601
(312) 422-6100 / (f) 312-422-6110
jfilipovic@ohaganmeyer.com
rolson@ohaganmeyer.com

Alice B. Jennings (P29064)
**EDWARDS & JENNINGS, P.C.**
Attorney for Plaintiff *(Pro Hac Vice)*
3031 West Grand Blvd., Ste. 435
Detroit, MI 48202
(313) 961-5000
ajennings@edwardjennings.com

/

## PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT AND FOR EQUITABLE AND INJUNCTIVE RELIEF; AND RELIANCE ON JURY DEMAND

NOW COMES Plaintiff, CELESTE C. SMITH, by and through her attorneys, Edwards & Jennings, P.C., by Alice B. Jennings and Melvin Houston, and states the following in support of her Motion for Leave to File a First Amended Complaint and for Equitable and Injunctive Relief:

1. This is a civil rights matter filed on February 20, 2026, (Doc. #1) by Plaintiff Celeste Smith, Defendants' former Senior Program Director.

2. Defendants, in lieu of answering Plaintiff's Complaint, on May 11, 2026 filed a Motions to Dismiss requesting that the Court dismiss Plaintiff's entire Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12 (b)(6). [Doc. Nos. 22, 24 and 26.]

3. Plaintiff requests leave to file Plaintiff's First Amended Complaint and Reliance on Jury Demand, and for Equitable and Injunctive Relief as proposed and attached to this instant Motion. (**Ex. 1,** Plaintiff's Proposed First Amended Complaint and for Equitable and Injunctive Relief; and Reliance on Jury Demand.)

4. Plaintiff seeks to file a First Amended Complaint to plead additional facts raised by Defendants' three (3) Motions to Dismiss, if the Court finds such amendment required. on Count VII of Plaintiff's Promissory Estoppel and Equitable Estoppel Count; and to dismiss certain claims without prejudice.

5.     Here, Plaintiff in the interest of court time and efficiency, seeks to file a First Amended Complaint which eliminates the Defendants' Motions to Dismiss based on Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

6.     Fed. R. Civ. P. 15(a) allows for amendment of pleadings where "justice so requires" and prejudice of the nonmoving party cannot be shown. Defendants will not be prejudiced by the filing of Plaintiff's proposed First Amended Complaint and for Equitable and Injunctive Relief, whereas here no discovery has occurred; or Scheduling Conference held; nor have Initial Disclosures been filed, pursuant to Fed. R. Civ. P. 26.

7.     Concurrence of counsel has been requested and is pending.

WHEREFORE, Plaintiff Smith requests an Order allowing Plaintiff Smith to file the attached First Amended Complaint and for Equitable and Injunctive Relief attached as **Ex. 1**.

Respectfully submitted,

EDWARDS & JENNINGS, P.C.

By:   /s/ Alice B. Jennings
      Alice B. Jennings (P29064)
      Attorney for Plaintiff
      ajennings@edwardsjennings.com

3

By:  /s/ Melvin Houston
       Melvin Houston (6188334)
       Attorney for Plaintiff
       aa4624@wayne.edu

Dated: June 19, 2026

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

CELESTE C. SMITH,

          Plaintiff,

vs.

WAYFARER FOUNDATION and
WAYFARER PATHWAYS, and
STEVE SAROWITZ, Individually.

          Defendants.

Case No. 1:26-cv-01940
Hon. Jorge L. Alonso

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR LEAVE
## TO FILE A FIRST AMENDED COMPLAINT
## AND FOR EQUITABLE AND INJUNCTIVE RELIEF;
## AND RELIANCE ON JURY DEMAND

## CONCISE STATEMENT OF ISSUES PRESENTED

Will the Court allow Plaintiff Smith to file a First Amended Complaint and for Equitable and Injunction Relief, in accordance with Fed. R. Civ. P. 15(a) which allows for the amendment of pleadings where "justice so requires?"

Plaintiff says:        YES
Defendant says:        Concurrence is pending
Court says:            Not yet ruled on

## CONTROLLING AUTHORITY

Fed. R. Civ. P. 15(a)..................................................................8

*Pittman ex rel Sykes v Franklin,*
282 F. App'x. 418, 425 (6th Cir 2008................................................9

*Wade v Knoxville Utilities Bd.,*
259 F.3d 452, 458-59 (6th Cir. 2001) ..............................................9

## I.    STATEMENT OF FACTS

1.    This is a civil rights matter filed on February 20, 2026, by Plaintiff Celeste Smith, Defendants' former Senior Program Director. (Doc. #1)

2.    Defendants, in lieu of answering Plaintiff's Complaint, on May 11, 2026 filed Motions to Dismiss requesting that the Court dismiss Plaintiff's entire Complaint. [Doc. Nos. 22, 24 and 26.]

3.    Plaintiff requests leave to file Plaintiff's First Amended Complaint and for Equitable and Injunctive Relief as proposed and attached to this instant Motion. (**Ex. 1,** Plaintiff's proposed First Amended Complaint and for Equitable and Injunctive Relief; and Reliance on Jury Demand.)

4.    Plaintiff seeks to file a First Amended Complaint to plead additional facts on Count VII of Plaintiff's Promissory Estoppel and Equitable Estoppel Count. Plaintiff's Motion for Leave to File a First Amended Complaint

5.    Here, Plaintiff in the interest of court time and efficiency, seek to file a Complaint which eliminates the Defendants' Motions to Dismiss.

6.    Fed. R. Civ. P. 15(a) allows for amendment of pleadings where "justice so requires" and prejudice of the nonmoving party cannot be shown. Defendants will not be prejudiced by the filing of Plaintiff's proposed First Amended Complaint and for Equitable and Injunctive Relief, whereas here no discovery has occurred; or

Scheduling Conference held; nor have Initial Disclosures been filed, pursuant to Fed.

R. Civ. P. 26.

## II.   ARGUMENT

Plaintiff relies upon Fed. R. Civ. P:

Rule 15-Amended and Supplemental Pleadings

(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. **Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leaves shall be freely given when justice so requires.** A party shall plead in response to an amended pleading within the time remaining for responses to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Here Plaintiff Smith, in the interest of moving her case forward, seeks to

clarify her claims under Title VII, ADA, ADEA and Illinois Human Rights Act, and

Illinois State Claim of Promissory Estoppel.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, leave to amend "should be freely given when justice so requires." The Sixth Circuit "has held that a number of factors should be considered, including [u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment…" *Pittman ex rel Sykes v Franklin,* 282 F. App'x. 418, 425 (6th Cir 2008)(quoting *Wade v Knoxville Utilities Bd.,* 259 F.3d 452, 458-59 (6th Cir. 2001)).

9

Defendants have, in lieu of answering Plaintiff's Complaint, seek to dismiss Plaintiff's Complaint based under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendants can show no prejudice to an approach that provides for streamlining this lawsuit and avoiding undue delay. If this Motion is granted by the Court the Plaintiff will, within seven (7) days, file the attached Proposed Amended Complaint. (See **Ex. 1**.)

## III.  CONCLUSION

Therefore, Plaintiff Smith requests this Court grant her Motion for Leave to File A First Amended Complaint and for Equitable and Injunctive Relief.

Respectfully submitted,

EDWARDS & JENNINGS, P.C.

By:  /s/ *Alice B. Jennings*
Alice B. Jennings (P29064)
Attorney for Plaintiff
ajennings@edwardsjennings.com

By:  /s/ Melvin Houston
Melvin Houston (6188334)
Attorney for Plaintiff
aa4624@wayne.edu

Dated: June 19, 2026

10

## Certificate of Service

The undersigned certifies she caused a copy of Plaintiff's Motion for Leave to File A First Amended Complaint and For Equitable and Injunctive Relief; and Reliance on Jury Demand to be filed electronically with the Clerk of the Court on June 19, 2026, and the Clerk will serve the same upon all counsel of record in this action.

/s/ Alice B. Jennings
Alice B. Jennings

11

12

## INDEX OF EXHIBITS

1.     Proposed First Amended Complaint

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

CELESTE C. SMITH,

           Plaintiff,

vs.

WAYFARER FOUNDATION and
WAYFARER PATHWAYS, and
STEVE SAROWITZ, Individually.

           Defendants.

Case No. 1:26-cv-01940
Hon. Jorge L. Alonso

## EXBHIIT 1

## Plaintiff's Motion For Leave to File First Amended Complaint

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

CELESTE C. SMITH,

          Plaintiff,

vs.

WAYFARER FOUNDATION and
WAYFARER PATHWAYS, and
STEVE SAROWITZ, Individually.

          Defendants.

Case No. 1:26-cv-01940
Hon. Jorge L. Alonso

_____/

Melvin Houston (6188334)
Attorney for Plaintiff
15346 Asbury Park
Detroit, MI 48227-1545
(313) 835-6479
aa4624@wayne.edu

Jamie L. Filipovic
Riley B. Olson
O'Hagan Meyer, LLC
One E. Wacker Dr., Suite 3400
Chicago, IL 60601
(312) 422-6100 / (f) 312-422-6110
jfilipovic@ohaganmeyer.com
rolson@ohaganmeyer.com

Alice B. Jennings (P29064)
**EDWARDS & JENNINGS, P.C.**
Attorney for Plaintiff *(Pro Hac Vice)*
3031 West Grand Blvd., Ste. 435
Detroit, MI 48202
(313) 961-5000
ajennings@edwardjennings.com

_____/

## PLAINTIFF'S PROPOSED AMENDED COMPLAINT
## AND RELIANCE ON JURY DEMAND

NOW COMES Plaintiff, CELESTE C. SMITH, by and through her attorneys,

Melvin Houston and Edwards & Jennings, P.C., by Alice B. Jennings, and timely

brings this discrimination and retaliation Complaint against Defendants Wayfarer Foundation, Wayfarer Pathways and Steve Sarowitz, as an individual, and in support of her Complaint against Defendants, states as follows:

## I.  NATURE OF COMPLAINT

### A.  Federal Law Violations Against All Defendants

1.  This suit is brought by Plaintiff, Celeste C. Smith, a fifty-two (52) year old, Muslim, female African American who has been subjected to age, religion, gender and race discrimination, including disparity of treatment and hostile work environment. Plaintiff, after engaging in protected activity, experienced retaliation by Defendants, including individual, Steve Sarowitz, in violation of Title VII of the Civil Rights Act of 1964 as amended and codified at 42 USC §2000 *et. seq*, based on gender, religion, and race; the Age Discrimination In Employment Act of 1967 (ADEA), based on age and Americans with Disabilities Act (ADA).

### B.  State Counts

2.  Plaintiff Smith brings counts under the Illinois Human Rights Act for age, religion, gender, race and disability discrimination. Plaintiff pleads she was retaliated against after she engaged in protected activity by advising Defendants *Wayfarer Foundation and Wayfarer Pathways* of her claims. *Plaintiff, individually, brings a retaliation Count against individual Sarowitz.*

2

3. Plaintiff Smith brings an Illinois state law claim for Promissory Estoppel, ~~and Equitable Estoppel~~, resulting in damages after Plaintiff detrimentally relied upon Defendants' promises that the Defendant Wayfarer Foundation would not be "sunset" or discontinued for fifteen (15) years, but "sunset" in four (4) years.

### C. Relief Requested

4. Plaintiff Smith seeks all available remedies, including any and all damages allowable under the Title VII, ADEA, ADA, and Illinois Human Rights Act; and Promissory Estoppel and ~~Equitable Estoppel~~ law in Illinois.

## II. JURISDICTION AND VENUE

5. Federal jurisdiction is proper under 28 USC §1343(3) and 38 USC §1331 federal questions. Supplemental state claims are proper under 28 USC §1367. Venue is proper in this District Court under 28 USC §1391.

6. The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) dollars.

## III. THE PARTIES

7. Plaintiff, Celeste C. Smith, is a resident of the County of Cook, City of Chicago, State of Illinois.

8. Defendant Wayfarer Foundation was, until July 1, 2025, a non-profit organization with its principal place of business in Cook County, Wilnette, Illinois.

3

9. Defendant Wayfarer Pathways is a *for profit* corporation with its principle place of business in Cook County, Highland Park, Illinois.

10. Plaintiff Smith, at all times, was employed by Defendants in its office located in Cook County, at 350 Linden Avenue, Wilnette, Illinois. *Defendant Wayfarer Pathways was a joint employer to Plaintiff Smith as defined by 7th Circuit law.*

11. All acts and omissions by Defendants' officers, directors, its Human Resources Department personnel and agents, including its Board of Directors, including but not limited to Steve Sarowitz, Founder and Board Chairperson of Wayfarer Foundation *and owner/Founder of Wayfarer Pathways*; and Jenniffer Weigal, Interim CEO/Executive Director, for Pathways Foundation; and Wayfarer Pathways Human Resources Director, Lori Kleiman, and other Human Resources personnel, *and Wayfarer Pathways COO Elyse Lilwack* were acting within the scope of their employment and/or responsibilities at all relevant time periods stated in the Complaint, ~~*post-July 1, 2025, within "Private Giving Wayfarer Pathways*~~."

## IV. STATEMENT OF FACTS

12. Plaintiff Smith was aggressively recruited by then Executive Director of the Wayfarer Foundation, in 2023 to end her employment at The Pittsburgh Foundation, as a Senior Program Officer, to work as an employee at the newly formed Wayfarer Foundation, a private non-profit arm of the Wayfarer Pathways, a

4

for profit corporation. *At the time of the recruitment, Plaintiff lived in Pittsburgh, Pennsylvania. Plaintiff's reputation in the philanthropic community was excellent.*

13. On November 25, 2025, Plaintiff Smith, then a terminated employee of Defendants Wayfarer Foundation and Wayfarer Pathways, filed an Equal Employment Opportunity Commission (EEOC) Charge No. 440-2025-08780 with charges of: Violation of Title VII; Violation of Age Discrimination in Employment Act (ADEA), Violation of Americans with Disability Act (ADA), and Violation of the Illinois Human Rights Act, filed concurrently with the EEOC charge. *Plaintiff Smith concurrently exhausted her administrative remedies with the EEOC and with the Illinois Human Rights Act to file this Complaint timely.*

14. On or about November 25, 2025, Plaintiff Smith received a "Notice of a Right to Sue" email from the EEOC, dated November 25, 2025, for her Charge No. 440-2025-08780. This claim is being timely filed. *On December 3, 2025, Plaintiff received a letter of her rights under the IHRA.*

15. Plaintiff Smith is a fifty-two (52) year old African American female. Plaintiff Smith's religion is Muslim. In April 2025, Plaintiff Smith was injured and required accommodation under the ADEA, which she was exercising at the time of termination.

5

16. Plaintiff Smith has a Bachelor of Arts in Management from Chatham University. Plaintiff Smith, with over fifteen (15) years of experience in non-profit employment and board service affiliations with non-profits, by 2023 had a reputation as an excellent expert in all facets of non-profit management. Plaintiff had received awards and honors for her outstanding work. Plaintiff's reputation in the field of philanthropy was well known in 2023.

17. At the time of Plaintiff's hire with Defendants, Plaintiff's executive overarching skill set and competencies included, as reflected on her Curriculum Vitae:

EXECUTIVE SUMMARY
Spiritually grounded philanthropic executive with more than 15 years of senior leadership across foundations, cultural institutions, and movement-based organizations. Proven steward of complex, values-driven institutions with deep experience in trust-based grantmaking, organizational culture, narrative strategy, and board partnership. Brings a pluralistic systems-oriented approach to leadership that integrates spiritual practice, learning, and evaluation in service of long-term social transformation. Widely respected for guiding organizations through growth, complexity, and change while honoring multiple ways of knowing and the leadership of frontline communities.

EXECUTIVE COMPETENCIES
- Executive Leadership and Institutional Stewardship
- Spiritually Grounded and Values-Based Philanthropy
- Board Partnership, Governance Support, and Executive Advising
- Strategic Grantmaking and Ecosystem Design
- Organizational Culture, Learning, and Change Leadership
- Participatory and Trust-Based Funding Practices
- Narrative Strategy and Thought Leadership

6

- Budget Oversight, Resource Allocation, and Risk Awareness
- Public Speaking, Convening, and External Representation

18.     The Wayfarer Foundation, a private non-profit organization, was founded by businessman Steve Sarowitz and actor Justin Baldoni in 2019, it began operating in 2021. The Wayfarer Foundation was a philanthropic branch of Wayfarer Pathways, the for-profit umbrella parent corporation. The Human Resources functions for Defendant Wayfarer Foundation at all times during its operations were administered by Wayfarer Pathways, including Plaintiff's hire in 2021, the medical leave and accommodations and termination on May 2, 2025. *Plaintiff was a joint employee of Defendants Wayfarer Foundation and Wayfarer Pathways.*

19.     According to its website, Wayfarer Foundation was created: "as a Baha'i-inspired organization with the mission to "advance humankind spiritually towards a future peaceful world civilization." The organization's stated goal was to fund and support "spiritually-rooted and justice-oriented nonprofits." *The organization was not a church or a religious non-profit. Plaintiff was not a minster or religious person.*

20.     The Wayfarer Foundation actively and aggressively pursued Plaintiff to work at Wayfarer Foundation though she was Senior Program Officer at The Pittsburgh Foundation, with several years of seniority, and with a high potential for advancement.

7

21. In hiring discussions and negotiations with Defendants, Plaintiff asked about the longevity of the Wayfarer Foundation's commitment to its stated purpose. Plaintiff was reassured, by the then Executive Director Laura Herrick, with promises that the "sunset provision" for the Foundation was at least fifteen (15) years from its inception in 2021. ***Executive Director Herrick reported directly to the Board, including Board President Sarowitz, who approved the hire.***

22. Plaintiff Smith would not have accepted employment with Defendants if she had not been promised by Defendants that the non-profit would operate under a fifteen (15) year "sunset" term.

23. Plaintiff, in interview with Defendants, a mother of three, was concerned about the stability and longevity of the position with Defendants and required stable employment and medical benefits for her family. ***Plaintiff was assured that the position was long term and the opportunity for advancement was great. Based upon these promises, Plaintiff moved her family from Pittsburgh, Pennsylvania to Chicago, Illinois.***

24. Plaintiff Smith, planning for a long-term career with Defendant Wayfarer Foundation, resigned from her position at the Pittsburgh Foundation. Plaintiff was hired on June 19, 2023 into the position of Program Officer of Arts.

25. In December 2023, Plaintiff Smith, because of recognition of her excellent performance, was promoted to the position of Program Director. Less than

8

a year later, in August 2024, again because of her excellent performance, Plaintiff was promoted to Senior Program Director.

26. In the position of Senior Program Director, Plaintiff Smith became a member of Defendant Wayfarer Foundation's "Executive Team."

27. As Defendant's Senior Program Director, nine (9) employees reported directly to Plaintiff Smith. Plaintiff's duties were both public facing and internal to the Foundation. Plaintiff states her duties in the position were:

- Leading governance-aligned development and execution of a $34 million grantmaking portfolio advancing racial justice, healing, and systemic transformation
- Built strategy, staffing structures, and learning frameworks aligned with Bahá'í principles of unity, human dignity, and collective flourishing
- Supervised senior directors and cultivated an organizational culture rooted in reflection, accountability, and belonging
- Partnered closely with finance, grants management, and operations to ensure mission, resources, and practice were fully aligned
- Designed and facilitated spiritually informed convenings, learning journeys, and narrative initiatives

28. From June 2023 to January 2025, Plaintiff Smith reported to Laura Herrick in her position of Executive Director and then CEO of Wayfarer Foundation.

29. Plaintiff Smith's Performance Reviews, at all times were excellent, while reporting to Executive Director/CEO Laura Herrick. Plaintiff received merit increases and bonuses based on her excellent work in 2023, 2024 and initially in 2025.

9

30. In or around October 2024, Plaintiff became aware of repeated statements and decisions by the organization's founder, Defendant Steve Sarowitz, that revealed a pattern of hostility toward Muslims, including the Nation of Islam, also known as "Black Muslims." Sarowitz showed open animosity to individuals expressing solidarity with the Palestinian people who were facing a humanitarian crisis. As a practicing Muslim, a member of the Nation of Islam, Plaintiff was made to feel targeted and alienated in internal communications and decision-making spaces and was treated hostilely when she spoke to Steve Sarowitz about her beliefs.

31. On or about October 2024, Plaintiff Smith attended a conference in South Dakota, A Gathering of Relatives, where individual Defendant, Sarowitz, Founder and Board Chair of Defendant's Foundation, also was present. The event was sponsored in part by Indigenous Peoples. During the conference Defendant Sarowitz, after an Indigenous elder expressed solidarity with the Palestinian community, made statements showing racial and religious bias. During the conference Sarowitz confronted participants from various religions, Foundation colleagues, and argued hostilely about his position supporting the Israeli side of the event. If anyone disagreed with him, he would become angry and people reported they felt threatened. Plaintiff spoke to him about his behavior.

32. The Defendant Foundation staff who reported to Plaintiff, including Plaintiff Smith, who attended the conference, were shocked and humiliated by

10

Sarowitz' behavior, considering the Foundation's core values. Sarowitz's conduct showed not only racial bias and religious bias but were not aligned with the tenets of the Foundation. Plaintiff attempted to discuss Sarowitz' behavior with him at the conference but he reacted with anger.

33. After the conference, employees who attended, reported feeling fear towards Defendant Sarowitz' presence in the office.

34. After the October 2024 Conference, Plaintiff and other Defendant Wayfarer Foundation staff who were perceived as supporting Palestinian causes, or part of Muslim communities, were questioned in terms of religious beliefs, loyalty, and trustworthiness. This focus led to an environment of hostility, exclusion, and religious stereotyping. These attitudes directly impacted Plaintiff's participation in leadership discussions, creating a hostile and discriminatory work environment.

35. After the October 2024 conference, the Executive Director refused to allow Sarowitz to come to the Foundation office, but he eventually came and "apologized" to the staff for his behavior.

36. In January 2025, the Executive Director/CEO Laura Hewrrick, took a leave of absence. Plaintiff then reported directly to Sarowitz.

37. On March 14, 2025, Plaintiff was "invited" to a breakfast meeting with Defendant Sarowitz at his home. Plaintiff was reporting directly to Sarowitz who had become the new Interim Executive Director/CEO. Immediately Sarowitz began

11

to ask Plaintiff Smith invasive, probing questions about the Qur'an and her Muslim religion and its beliefs. Plaintiff felt the conversation was hostile, discriminatory and unwelcome. Defendant Sarowitz then questioned Plaintiff about her political beliefs, specifically as it relates to her humanitarian support for the people of Palestine. Plaintiff openly pushed back on Sarowitz' negative comments on her religion and its practices.

38. During the breakfast meeting with Sarowitz pressed Plaintiff to assess the loyalty of other staff and made veiled accusations, he stated "she couldn't have done it alone" when referring to the former Executive Director Herrick keeping him out of the office and other issues between the two. Defendant Sarowitz expressed a strong preference for hiring Bahá'í staff, including bringing back a former Bahá'í employee and promoting another Bahá'í applicant previously not selected. Plaintiff, who was primarily responsible for hiring, stated clearly that hiring based on religious identity was inappropriate, and that equity required competency-based and values-based hiring practices. Again, Plaintiff did not agree with Sarowitz that she would hire individuals based only on their Bahá'í faith.

39. The March 14, 2025 "breakfast" conversation with Sarowitz marked a significant escalation in the discriminatory hostile environment and led to retaliatory behavior that followed, including Plaintiff's termination *on May 2, 2025*.

40. After Plaintiff *engaged in protected activity of* advis*ing* Sarowitz, in the March 14, 2025 meeting, that she objected to and was offended by Sarowitz's statements about her Muslim faith and the issue of Palestine; and his request that Plaintiff favor candidates who practiced Baha'i religion, Sarowitz denied Plaintiff Smith any consideration for the Interim Executive Director position after *CEO/Executive Director* Herrick resigned, instead, hiring a white, ~~younger~~ candidate, Jenniffer Weigel, a member and practitioner of the Baha'i faith. Plaintiff was more qualified for the Executive Director position after Herrick resigned, but was not interviewed or considered for the position. Defendant Sarowitz did not mention the open position to Plaintiff Smith.

41. Plaintiff was explicitly prevented from being considered for the role of Interim Executive Director, despite her tenure, seniority, and excellent qualifications. There was no open or transparent process for the selection, and the Executive Director position opportunity was never officially posted or made accessible to Plaintiff Smith. *Plaintiff Smith was not interviewed for the Executive Director position.*

42. In March 2025, at Defendant Sarowitz's instructions, Wayfarer Foundation staff were pressured to participate in religious programing. During this time, staff were encouraged to take part in Ruhi courses, which are educational programs rooted in Bahá'í teachings. While framed as professional development,

13

these programs carried an explicit religious bias and were presented without consideration for religious diversity or inclusion. Regardless of religious belief, employees were required to attend.

43. From the time of CEO Herrick's leave of absence in January 2025 to late March 2025, no person other than Defendant Sarowitz was in the position of Executive Director or CEO. The Interim Executive Director, Weigel, started her position in late March. *After Herrick's resignation, Defendant Sarowitz began to have discussions involving the Defendant Foundation reviewed by Pathways and its employees. The executive teams of the two (2) organizations would meet jointly with Defendant Sarowitz.*

44. Plaintiff knows she was treated in a disparate manner by Defendant Sarowitz where she was the best qualified for the Executive Director /CEO position but a ~~younger~~, white non-Muslim, of the Bahá'í faith, Jenniffer Weigel, with little or no experience or skill to direct the Wayfarer Foundation, including the Department's grant funding and public facing community outreach, which Plaintiff was Senior Director over.

45. From March to the first weeks of April 2025, Plaintiff was retaliated against by being excluded from strategy meetings and removed from decision making spaces that she had previously led. Plaintiff was aware she was being

14

"undermined" in terms of visibility and leadership circles in the Defendant Foundation *by Defendant Sarowitz.*

46. On March 31, 2025, Plaintiff suffered an injury in a fall while at home. Because of the fall, Plaintiff was unable to work at all until April 11, 2025. After April 11, 2025, Plaintiff, through her physician, sought and received accommodation under the ADEA to work part-time, four hours a day. The restriction was granted by Defendant Wayfarer Pathways' Human Resources Department by Lori Kleiman.

47. During Plaintiff's time on restricted duty, Interim Executive Director, Weigel, attempted repeatedly to have Plaintiff work beyond her work restriction, so she could obtain "quick wins" for "Steve" and obtain the Executive Director position permanently.

48. Plaintiff, in her discussion with Weigel, reminded her of Defendant Wayfarer Foundation's stated values – Unity in Diversity, Justice, Spiritually, Continuous Learning – and that her behavior contradicted these principles. This exchange was another form of retaliation during protected medical leave. Weigel responded to Plaintiff with, "Steve" needs "quick wins."

49. The behavior of the Interim Executive Director Weigel and under the instruction of Defendant Sarowitz, became so severe and hostile, Plaintiff reached out and filed a *disability* discrimination complaint *for harassment* against Executive Director Weigel because of her harassing treatment during the time she was

15

recuperating from a very serious and painful rib contusion and bruise. ***The complaint was never investigated.*** Plaintiff, home after a possible fractured rib, was asked, "Which rib?," by Interim Executive Director Weigel. Though Weigel knew Plaintiff was in severe pain and on an accommodated approved schedule, Plaintiff should continue working on "strategy documents" and was denied an extension despite her accommodation status. Interim Director Weigel told Plaintiff, "I know you're use to white people making rushed decisions, but that's not what this is." Plaintiff was shocked and offended by the racialized remark and knew requiring her to work during an approved time off, well over her restricted limit for an injury, was not legal under Defendants' policies and procedures, or federal or state law. Plaintiff was in physical pain and felt pressured by her Executive Director telling her she needed "quick wins" while in her interim position of Executive Director so she could hold on to the position with Steve. Plaintiff knew that the Wayfarer Foundation had a race disparity problem from discussing the issue with her staff and reviewing a documentation of race bias in a paper written by an African American Wayfarer Foundation Board member. Plaintiff knew this treatment by Weigel was retaliatory also for her recent formal complaint of discrimination and retaliation. The disability complaint was filed with a Human Resources contractor.

50. In April 2025, during a Wayfarer Foundation Board meeting, Plaintiff discussed two (2) grant applications, which were off cycle requests. Defendant

16

Sarowitz, though the grants were for two hundred thousand ($200,000.00) and fifty thousand ($50,000.00) dollars, began to ask questions about the smaller application. The smaller application was for a Muslim health clinic in Chicago. Plaintiff experienced Sarowitz once again asked probing questions about a Black Muslim woman's grant and bias race and religious questions about whether the clinic had familial ties to Betty Shabazz (deceased), the widow of Malcomb X (deceased). The Shabazz family is African American and Muslim. The disparity in treatment was so glaring; Plaintiff Smith was deeply troubled by the racial and religious bias being conducted by Defendant Sarowitz and condoned by the Interim Executive Director Jenniffer Weigel who was present. Plaintiff spoke up by answering all the questions but noted the disparity in treatment.

51. In mid-April 2025, in a discussion with Defendant Sarowitz, about hiring Defendant Sarowitz' nephew, Plaintiff raised concerns about transparency. Defendant Sarowitz responded with visible escalating anger, saying, "Is there a problem with hiring my nephew? I want my nephew to be hired," the volume and tone was intimidating, hostile and unwelcome. This interaction with Defendant Sarowitz was coercive, inappropriate, and retaliatory in nature, and was done before several of Plaintiff's colleagues.

52. On April 23, 2025, Plaintiff filed a formal discrimination/retaliation complaint to Defendant Wayfarer Foundation's leadership, Defendant Sarowitz,

17

Weigel and Wayfarer Pathways Chief Operating Officer, Elyse Lilwack, and Human Resources Director, Lori Kelman. Included in the complaint, but not limited in content, "the recent termination of Minito's contract along with other developments, have raised deep concerns for me about the organizational climate of the Wayfarer Foundation. I have experienced the environment as increasingly inhospitable and believe I am being subjected to discriminatory treatment based on my religion (Muslim) and race (Black)."

53.     After Plaintiff, and other employees, formally complained to Defendants' Human Resources contractor, the contract with the Human Resources consultant was abruptly terminated before an internal impartial discrimination review could occur on Plaintiff's discrimination and retaliation complaint.

54.     Within ten (10) days of Plaintiff making her formal complaint in April 2025; and while other complaints were pending, the Defendants shut down Defendant Wayfarer Foundation.

55.     On May 2, 2025, and less than four (4) years into its sunset promise, during the pendency of Plaintiff's unresolved complaint of discrimination, Defendant Sarowitz issued the following statement:

> Over the past four years, Wayfarer Foundation has supported dozens of grantee partners in fulfilling their missions. I am so incredibly proud of the impact this organization has made and deeply grateful for our staff, board, donors and partners.

18

Upon unanimous decision of the board of directors, today we will begin the process of sunsetting the Foundation. We will honor all of our current grant commitments as we carefully wind down operations over the next several weeks. Although the Wayfarer Foundation is closing, my personal commitment to giving remains strong, and I'm dedicated to making an impact on society through the ongoing mission and work.

We understand that this news may come as a surprise, and we will be actively working over the next several weeks to ensure all matters ae concluded with care and attention.

With gratitude,
Steve Sarowitz
Founder of Board, Wayfarer Foundation

56.    Plaintiff learned that all other staff continued to work at Defendant Wayfarer Foundation until June 30, 2025, including the staff that reported directly to Plaintiff Smith. After June 30, 2025, 83% of the former Wayfarer Foundation staff was transferred to Pathways doing philanthropic work in a Department of Wayfarer Pathways. The person who was designated to perform the leadership role Plaintiff previously performed, is a younger male employee who is of the Bahá'í religion, without a disability or accommodation.

57.    At the time of the abrupt termination of the Human Resources Representative contractor, other complaints were pending from those employees with "protected classification," including the initial complaint Plaintiff filed against Interim Executive Director Weigel, during her interference with her protected accommodations.

19

58. After Plaintiff was terminated by phone, by Wayfarer Pathways, Plaintiff learned that she was the only employee singled out to have two (2) Human Resources personnel present in her termination.

59. On May 2, 2025, less than two (2) weeks after filing her discrimination/retaliatory complaint with Pathway's Human Resources, a phone call was scheduled with Plaintiff while she was working four (4) hours per week, with restrictions, from home.

60. The retained and transitioned employees of Wayfarer Foundation continued the work previously performed by Defendant Wayfarer Foundation, at Defendant Wayfarer Pathways, in a Department created called "Private Giving." The retained employees were predominantly Bahá'í faith.

61. Plaintiff was terminated in a telephone call on May 2, 2025, while she was working in an accommodated position from home, with an injury; *with two (2) discrimination complaints pending*. Defendant Wayfarer Pathways' Chief Operating Officer Elyse Litwack and, Robert Henderson, a Bahá'í, stated the Wayfarer Foundation was sunsetting and closing at the end of June 2025. *Plaintiff's Human Resources complaints were not investigated.*

62. Plaintiff Smith was retaliated against by being terminated on May 2, 2025, prior to the completion of Defendant Wayfarer's fifteen (15) year sunset provision. Plaintiff Smith was asked to sign a severance agreement, resolving

completely any rights she had based on all federal and state civil rights law, for a two-month period of wages. Plaintiff Smith filed an Equal Employment Opportunity charge, *concurrently with a Illinois Human Rights Department charge*.

63.     Plaintiff detrimentally relied upon Defendants' promises that the employment with Wayfarer Foundation and Wayfarer Pathways was stable and had over twelve (12) years at least of function prior to it "sunsetting." Terminating Plaintiff in violation of the ADA, were intentional and willful, in deliberate disregard and with reckless indifference to the rights of Plaintiff Smith.

64.     As a direct and proximate result of Defendants' violations of Plaintiff Smith's rights under the Title VII, ADEA and ADA as stated, Plaintiff's terms, conditions and privileges of employment were adversely affected, as were her rights under Illinois State law, Human Rights Act. Defendants broke their promises to Plaintiff where she planned and expected a long productive tenure with the Defendants, but such promises which Plaintiff relied on were broken to Plaintiff's detriment.

65.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of medical insurance and other fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation;

21

and loss of the ordinary pleasures of everyday life; including the right to pursue the

gainful employment in the field of non-profit management.

## COUNT I

### VIOLATION OF TITLE VII – CIVIL RIGHTS ACT OF 1964 AS AMENDED 42 USC §2000e, *et. seq.* BASED ON SEX AND RACE AND RELIGION AS TO ~~ALL~~ DEFENDANTS *WAYFARER FOUNDATION AND WAYFARER PATHWAYS*

66. Plaintiff repeats, realleges and incorporates paragraph 1 through 65, as set forth here and above by reference.

67. Defendants Wayfarer Foundation, Wayfarer Pathways, and Steve Sarowitz, individually, have subjected Plaintiff Smith to sex, race, and religious discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000, *et. seq.* including but not limited to the following acts, as set forth in the Statement of Facts, herein and above:

   a. Recruiting Plaintiff aggressively from her place of employment with promises of high wages and advancement, with a "sunset" at Wayfarer Foundation of at least fifteen (15) years.

   b. Denying Plaintiff similar, and/or same opportunities, as compared to her white non-Muslim coworker's, with respect to the opportunity to progress to the Executive Director position; and replacing Plaintiff with a white, male Bahá'í after she was terminated on May 2, 2025, in the transferred department of Private Giving, Wayfarer Pathways.

   c. Plaintiff was treated disparately, with hostility, anger, and tone, after March 14, 2024, in the manner in which Defendant Sarowitz talked to her.

22

d.   Not allowing Plaintiff to perform her duties without bias based on race and/or religion.

e.   Removing Plaintiff from leadership decisions after Plaintiff did not agree with Defendant Sarowitz.

f.   Having Plaintiff evaluate grants and fund giving, using race and religion as a criterion.

g.   Despite Plaintiff's excellent reviews, repeatedly implying she was not trustworthy.

h.   Embarrassing and humiliating Plaintiff by terminating her from her position abruptly, affecting her reputation in the non-profit expert management community.

i.   Defendant Sarowitz making hostile and offensive unwelcome remarks about her religion and her position regarding the humanitarian crisis in Palestine which he assumed to be Muslim.

j.   Creating a race and Muslin hostile work environment by allowing comments to foster a race and religious bias atmosphere.

k.   Requiring Plaintiff to hire relatives and those of Bahá'í faith even if they were not best qualified.

l.   Not promptly and remedially addressing complaints made to Human Resources based on protected classifications under race and/or religious hostile work environment.

m.   Closing the Wayfarer Foundation and reconstituting it as a Department in Wayfarer Pathways "Private Giving" and staffing the entity with individual predominantly of the Bahá'í religion, instead of addressing the issues of discrimination and retaliation.

n.   Creating an intimidating and hostile work environment for Plaintiff after she objected to racial and religious bias discriminatory statements made by Steve Sarowitz in March 2025.

23

68.     As a direct and proximate result of said disparate treatment acts and omissions, under Title VII, Civil Rights Act of 1965, as amended, by Defendants' agents and employees. Plaintiff has suffered, and will continue to suffer, lost wages and pension benefits, loss of earning capacity, loss of reputation, loss of her professional esteem in her field of non-profit management and loss of reputation, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation; requiring treatment, all past, present and future.

WHEREFORE, Celeste Smith, demands judgment against Defendants Wayfarer Foundation, Wayfarer Pathways and Steve Sarowitz  for all damages allowable under federal law in excess of Seventy-Five Thousand ($75,000.00) as Plaintiff is found to be entitled, plus interest, costs, reasonable attorney fees, and all injunctive relief allowed under Title VII including back pay of all economic damages, and/or reinstatement of Plaintiff's terms and conditions of employment; including all cost and attorney fees as allowed by statute.

## COUNT II

### TITLE VII – RETALIATION AND RETALIATORY HARASSMENT BASED ON PROTECTED ACTIVITY AGAINST ~~ALL DEFENDANTS~~ *AS TO DEFENDANTS WAYFARER FOUNDATION AND WAYFARER PATHWAYS*

24

69. Plaintiff repeats, realleges and incorporates paragraph 1 through 68 as set forth here and above by reference.

70. Plaintiff Celeste Smith, an African American female Muslim, engaged in protected activity in 2024 and 2025 and has sought, as a member of the Executive Board of Defendant Wayfarer Foundation, to carry out Defendants' rules and regulations and state and federal laws.

71. In April 2025, Plaintiff engaged in protected activity by filing complaints of race and religious discrimination with Defendants' Human Resources contractor; and after the Human Resources contractor representative was abruptly terminated with Defendant Wayfarer Pathways, Human Resources Director and its executives.

72. As a direct consequence of Plaintiff's protected activity by asserting her rights for others and herself, Defendants, individually and/or personally, have subjected Plaintiff Smith to retaliation and retaliatory harassment, creating a hostile retaliatory environment, and creating adverse changes in the terms and conditions of her employment, including but not limited to:

   a. Talking to Plaintiff about her religion and expressing disdain for her Muslim faith or others who practice the faith.

   b. Not trusting Plaintiff even though her performance reviews were consistently excellent.

25

c.      Refusing to consider Plaintiff for the Interim Executive Director position; instead, hiring a less qualified non-African American, white Bahá'í person with no experience in the field.

d.      Eliminating Plaintiff from attendance at leadership meetings of the Executive Board.

e.      Talking to Plaintiff in a hostile and angry tone in front of her colleagues and direct reports.

f.      Requiring Plaintiff to evaluate grant applications for Blacks and Muslims in a more restrictive manner, asking questions of Plaintiff which were illegal and placing a higher level of scrutiny on recipients.

g.      Terminating Plaintiff overnight without any notice, even though she was on the "Executive Team."

h.      Replacing Plaintiff with a younger non-African American, male, Bahá'í faith employee.

73.     As a direct and proximate result of said retaliatory acts and omissions by Defendant Wayfarer Foundation, its agents and employees, and Defendant Wayfarer Pathways and individually, Defendant Sarowitz, Plaintiff has suffered and will continue to suffer lost wages and pension benefits, loss of earning capacity, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation, loss of reputation requiring treatment, all past, present, and future.

WHEREFORE, Plaintiff Celeste Smith, demands judgment against Defendant Wayfarer Foundation, Defendant Wayfarer Pathways and Defendant Steve Sarowitz, individually, for all damages allowable under federal law Title VII,

26

in excess of Seventy-Five Thousand Dollars ($75,000.00) as Plaintiff is found to be entitled, past and future, plus interest, costs, and reasonable attorney's fees; and/or all injunctive relief allowed under Title VII for engaging in protected activity by reporting her complaints under the act.

## COUNT III
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA) *AS TO DEFENDANTS WAYFARER FOUNDATION AND WAYFARER PATHWAYS*

74. Plaintiff repeats, realleges and incorporates paragraph 1 through 73 as set forth here and above by reference.

75. Plaintiff, at the time of her termination on May 2, 2025, was fifty-two (52) years old.

76. The person who Defendant Sarowitz selected for the Interim Executive Director position at Defendant Wayfarer Foundation was more than eight (8) years younger than Plaintiff. Plaintiff was not interviewed or considered for the open position though she was substantially more qualified than Jenniffer Weigel.

77. After Plaintiff was terminated in 2025, a younger employee, at least eight (8) years younger than Plaintiff Smith, was selected at Defendant Wayfarer Pathways to lead Private Giving staff that Plaintiff directed as Senior Program Director.

78. Age was one of the factors in Defendants' decision making as younger people were both selected into positions Plaintiff was denied though she was more qualified.

79. Plaintiff Smith has not been contacted to continue her career at Defendant Wayfarer Pathways since her May 2, 2025, abrupt termination.

80. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff Smith has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life; including the right to pursue the gainful employment of her choice.

WHEREFORE, Plaintiff Smith respectfully requests that this court enter judgment in her favor on her ADEA count, and allows her all damages allowed under the statute, including attorney fees and costs.

## COUNT IV
## VIOLATION OF THE AMERICANS WITH DISABILITY ACT (ADA)
### AS TO DEFENDANTS WAYFARER FOUNDATION
### AND WAYFARER PATHWAYS

81. Plaintiff repeats, realleges and incorporates paragraph 1 through 80 as set forth here and above by reference.

28

82. On March 31, 2025, Plaintiff suffered from a traumatic, painful injury, which substantially limits the major life activity of moving and working.

83. Plaintiff requested, after a short time being completely disabled, and was granted a work accommodation which allowed her to work remotely, part-time, under the approved accommodation from home.

84. In April 2025, Plaintiff was constantly harassed by Defendants' Interim Executive Director Weigel to perform work above and beyond the granted approved documentation. Though Defendant, through its Interim Executive Director Weigel, repeatedly stated that she wanted Plaintiff Smith to heal and get better, she constantly harassed Plaintiff with email, texts and phone calls, so much so, that Plaintiff Smith contacted the Human Resources contractor after she was unable to obtain an extension on a work assignment from Weigel. Plaintiff filed a complaint and asked for an investigation.

85. At no time did Defendant Wayfarer Foundation attempt to have an "interactive interview" as is required by the ADA, with Plaintiff to determine what was actually required in terms of a reasonable accommodation under the ADA but instead allowed Interim Director Weigel to interpret the accommodation on her and Defendant Sarowitz' actions.

86. Plaintiff obtained proper medical certification for her accommodation and met all of Defendants' guidelines

29

87.     Defendants' harassment subjected Plaintiff to a hostile, retaliatory work environment based upon interference with her alleged approved medical accommodation.

88.     While Plaintiff was on the work restriction from home, working four (4) hours per day, she was terminated on May 2, 2025, remotely without one day of notice. Other coworkers without a medical condition were not terminated.

89.     Defendants' actions subjecting Plaintiff to a hostile work environment, denying her reasonable accommodations; not conducting an interactive interview because of her disability and approved accommodation, and treating Plaintiff in a disparate harassing and oppressive manner.

90.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff Smith has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life; including the right to pursue the gainful employment of her choice.

WHEREFORE, Plaintiff Smith respectfully requests that this court enter judgment in her favor on her ADA count, and allow her all damages allowed, past and future, under the statute, including attorney fees and costs.

## COUNT V
## DISCRIMINATION IN VIOLATION OF
## ILLINOIS HUMAN RIGHTS ACT AS TO ALL DEFENDANTS
## BASED ON AGE, RACE, RELIGION, GENDER AND DISABILITY
## *AS TO ALL DEFENDANTS*

91.     Plaintiff repeats, realleges and incorporates paragraph 1 through 90 as set forth here and above by reference.

92.     At all material times, Plaintiff an older, Muslim female African American with a disability, was aggressively recruited by Defendants within the parameters of the Illinois Civil Rights Act.

93.     The actions and omissions of Defendants and their agents, representatives, and Human Resources Department, were deliberate and intentional.

94.     Plaintiff's age (52), gender (female), religion (Muslim) and/or race (African American) with disability and need for a medical accommodation, was at least one factor that made a difference in Defendants' decision to terminate Plaintiff and replace her with a younger non-African American male, non-Muslim, without a disability.

95.     Plaintiff's protected classifications were factors that made a difference in Defendants' decisions to terminate Plaintiff and not place her in its continuing philanthropic work at Wayfarer Pathways in the Department of Private Giving.

31

96. Defendants, by their agents, representatives and employees were predisposed to discriminate based on gender and/or race and acted in accordance with that predisposition.

97. Defendants, by their policies, procedures and practices, were predisposed to discriminate on the based on age, gender and/or race, disability and religion, and acted in accordance with that predisposition in not allowing Plaintiff to be selected for the Interim Executive Director at the Wayfarer Foundation and replacing her at Wayfarer Pathways after June 1, 2025 with a younger, white male, Bahá'í, without the need for an accommodation.

98. Defendants terminated Plaintiff's job because of her protected classification and discriminated against her when transferring its Wayfarer staff to its Wayfarer Pathways corporation in an attempt to avoid any requirement of investigating Plaintiff's discrimination and retaliation complaints filed in April 2025.

99. Defendants transferred predominantly Bahá'í employees but did not do so for Plaintiff, showing the pretext of its actions.

100. Plaintiff, at all times, worked at an excellent level performing the work of her Senior Project Manager position.

101. Defendants terminated Plaintiff because of her status within protected classifications of gender, race, age, religion and disability.

32

102. As a direct and proximate result of said acts and omissions under Illinois Human Rights Act by Defendants' agents and employees, Plaintiff Smith has suffered loss of wages, bonuses, benefits, loss of earning capacity, loss of dignity and enjoyment of life, mental and emotional distress, pain and suffering, embarrassment and humiliation.

WHEREFORE, Plaintiff Celese Smith demands judgment against the Defendants, for such amount as to make her whole, as Plaintiff is found entitled, plus interest, costs and reasonable attorney fees, including all equitable and injunctive relief as required.

## COUNT VI
## RETALIATION UNDER ILLINOIS HUMAN RIGHTS ACT
### *AS TO DEFENDANT WAYFARER FOUNDATION,*
### *DEFENDANT WAYFARER PATHWYAS AND*
### *DEFENDANT STEVE SAROWITZ, INDIVIDUALLY*

103. Plaintiff repeats, realleges and incorporates paragraph 1 through 102 as set forth here and above by reference.

104. Plaintiff Celeste Smith, an African American female Muslim, engaged in protected activity in 2024 and 2025 and has sought, as a member of the Executive Board of Defendant Wayfarer Foundation, to carry out Defendants' rules and regulations and state and federal laws.

105. In April 2025, Plaintiff engaged in protected activity by filing complaints of race, disability, and religious discrimination with Defendants' Human

33

Resources contractor; and after the Human Resources contractor was abruptly terminated, with Defendant Wayfarer Pathways, Human Resources Director.

106. As a direct consequence of Plaintiff's protected activity by asserting her rights for others and herself, Defendants, individually and/or personally, have subjected Plaintiff Smith to retaliation and retaliatory harassment, creating a hostile retaliatory environment, and materially adverse changes in the terms and conditions of her employment, including but not limited to:

a. Talking to Plaintiff about her religion and expressing disdain for her Muslim faith.

b. Not trusting Plaintiff.

c. Refusing to consider Plaintiff for the Interim Executive Director position; instead, hiring a less qualified white, non-African American, person of Bahá'í.

d. Shutting Plaintiff's attendance out of leadership meetings.

e. Talking to Plaintiff in a loud, hostile and angry tone in front of her colleagues and direct reports.

f. Requiring Plaintiff to evaluate grants, applications for Blacks and Muslims in a more restrictive manner, asking questions of Plaintiff which were illegal about such grants.

g. Terminating Plaintiff overnight without any notice, even though she was on the "Executive Team."

h. Replacing Plaintiff with a younger non-African American, male, Bahá'í faith employee after the function of her Foundation was transferred to a Department of the Defendant Wayfarer Pathways.

34

107. As a direct and proximate result of said retaliatory acts and omissions by Defendant Wayfarer Foundation, its agents and employees, and Defendant Wayfarer Pathways and individually, Steve Sarowitz, Plaintiff has suffered and will continue to suffer lost wages and pension benefits, loss of earning capacity, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation, loss of reputation requiring treatment, all past, present, and future.

WHEREFORE, Plaintiff Celeste Smith, demands judgment against Defendant Wayfarer Foundation, Defendant Wayfarer Pathways and Defendant Steve Sarowitz, individually, for all damages allowable under state law in excess of Seventy-Five Thousand Dollars ($75,000.00) as Plaintiff is found to be entitled, and to make her whole, plus interest, costs, and reasonable attorney's fees; and/or all injunctive relief allowed under the Illinois Human Rights Act for engaging in protected activity by reporting her complaints under the act.

## COUNT VII
### PROMISSIORY ESTOPPEL ~~AND EQUITABLE ESTOPPEL~~
### RESULTING IN DETRIMENTAL RELIANCE
### AS TO *DEFENDANT WAYFARER FOUNDATION,*
### *DEFENDANT WAYFARER PATHWAYS,*
### *AND DEFENDANT STEVE SAROWITZ, AS AN INDIVIDUAL*

108. Plaintiff repeats, realleges and incorporates paragraph 1 through 107 as set forth here and above by reference.

35

109. Defendants, through their agents and representatives, induced Plaintiff to believe, through its promises of employment with a base pay and substantive benefits, to leave her employment and to join Defendants with the future promise of advancement.

110. Defendants, through their agents and representatives, induced through promises Plaintiff to believe, through its offer, that she was hired and would maintain such employment at least through its sunsetting of the Wayfarer Foundation.

111. Defendants, through their agents and representatives, in June 2023, hired Plaintiff to the Wayfarer Foundation and knew that Plaintiff was relying on its promises.

112. Defendants affirmed to Plaintiff that the promises made to her were actual as shown by her promotions and increase in pay, bonuses and other terms and conditions of employment. Plaintiff was not told by any of the Defendants, including individual Defendant Sarowitz, that discrimination and retaliation, including disparate treatment and hostile work environment, were present in Defendants' Foundation and Pathways corporation.

113. Defendants closed down the Wayfarer Foundation after it operated for less than five (5) years, to Plaintiff's detriment where Plaintiff relied on the promise of fifteen (15) years prior to "sunset," to terminate her previous employment,

36

114. As a direct and proximate result of Plaintiff's reliance on Defendants' promises, Plaintiff suffered damages which consists of past and future loss of income, bonuses, benefits, all of which are required to support her family and self.

WHEREFORE, Plaintiff Celeste Smith, requests this Court enter judgment in her favor and against Defendants, granting relief for lost wages, benefits, compensatory damages for the amount she is found to be entitled; including non-economic damages, exemplary damages commensurate with the wrong, costs and attorney fees and/or equitable relief that appears appropriate at the time of trial.

Respectfully submitted,

EDWARDS & JENNINGS, P.C.

By: /s/ Alice B. Jennings
      Alice B. Jennings (P29064)
      Attorney for Plaintiff
      ajennings@edwardsjennings.com

By: /s/ Melvin Houston
      Melvin Houston (6188334)
      Attorney for Plaintiff
      aa4624@wayne.edu

Dated: June ___, 2026

37

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

CELESTE C. SMITH,

        Plaintiff,

vs.

WAYFARER FOUNDATION and
WAYFARER PATHWAYS, and
STEVE SAROWITZ, Individually.

        Defendants.

Case No. 1:26-cv-01940
Hon. Jorge L. Alonso

_____ /

Melvin Houston (6188334)
Attorney for Plaintiff
aa4624@wayne.edu

Jamie L. Filipovic
Riley B. Olson
jfilipovic@ohaganmeyer.com
rolson@ohaganmeyer.com

Alice B. Jennings (P29064)
**EDWARDS & JENNINGS, P.C.**
Attorney for Plaintiff *(Pro Hac Vice)*
ajennings@edwardjennings.com

_____ /

## RELIANCE ON JURY DEMAND

NOW COMES Plaintiff, CELESTE C. SMITH, by and through her attorneys,

Melvin Houston and Edwards & Jennings, P.C., Alice B. Jennings and hereby

demands a Jury trial in the above matter.

38

Respectfully submitted,

EDWARDS & JENNINGS, P.C.

By:＿＿＿/s/ *Alice B. Jennings*＿＿＿＿
   Alice B. Jennings (P29064)
   Attorney for Plaintiff
   ajennings@edwardsjennings.com

By:  /s/ Melvin Houston＿＿＿＿＿
   Melvin Houston (6188334)
   Attorney for Plaintiff
   aa4624@wayne.edu

Dated: June ＿＿, 2026

39